BOUTALL, Judge.
Defendant-employer, E. S. Upton Printing Company, Inc., appeals from a default judgment rendered in favor of a former employee, William Goble, awarding him unpaid commissions and attorney’s fees under R.S. 23:632 based on an employment contract. The judgment also called for an accounting under a subsequent employment contract to determine whether other commissions may be due, and reserved plaintiff’s right to claim other benefits of R.S. 23-631 et seq.
Goble had been employed as a salesman by Upton for two years under two different employment agreements of one year each, calling for a basic salary payable weekly, plus certain commissions as bonuses dependent on his production. He was paid his basic salary during his term of employment, and it is only the commissions that are in *DXLIII dispute. The issues raised by Upton on this appeal are: (1) the trial judge improperly interpreted the written contract governing the first year’s employment, and (2) there was insufficient evidence on this confirmation of default hearing to establish an oral agreement varying the terms of the two written contracts.
On this appeal we will consider only the judgment on the first contract because a part of the judgment rendered is not a final judgment.
Briefly, the first agreement called for a base salary of $18,000 a year figured on an annual quota of $240,000 in gross sales at 7x/2% commission.[1] The agreement provides for additional percentages earned when the salesman exceeded the bonus, and provides “an additional compensation figure” of 10% for new customers. It is conceded that Goble did not reach the quota of $240,000, and the narrow issue is whether the new business he brought in should be considered in his quota, entitling him to nothing extra, or whether the new business is additional compensation computed and owing without regard to the quota.
Appellant suggests that the proper interpretation of the contract is that first the agreement sets out the base salary and sets the annual quota. The balance of the contract then sets out bonuses applicable to those salesmen who bring in an excess of business over the quota, who are thus entitled to a bonus computed according to the schedule on old business, and computed as in the last paragraph on new business. Opposed to this, the employee contends that the base salary is payable, and if a salesman exceeds the quota the bonuses are paid according to the schedule. New business, however, is separate from the bonuses over quota, and it is payable in addition to base salary and without regard to quota. In our examination of the contract, we conclude that it is ambiguous to some degree and susceptible of different interpretations, but we agree with plaintiff’s interpretation.
On the confirmation of preliminary default, the plaintiff testified that he was not employed as were the regular salesmen of Upton but that his employment was basically to secure new business. He discussed the matter with Mr. Bell, President of Upton, and the agreement between them was reduced to writing. It is his explanation that the parties realized that there was no way that he could reach the bonus requirements of the employer and thus it was agreed that the 10% commission rate for new customers was in addition to the base salary and without regard to the quota. Appellant objects to this testimony on two grounds, (1) that oral testimony is not available to vary the terms of a written agreement and (2) that the testimony is insufficient to establish the proof required in confirmation of default. To this we reply that the testimony was not offered to vary the agreement placed in writing between the parties, but in explanation of some ambiguity in that written agreement, and is thus admissible. The trial judge obviously believed that plaintiff was a credible witness, and that testimony, coupled with the written agreement, constitutes sufficient proof of the demand.
*DXLIV Under the facts outlined above, we agree with the interpretation of the contract supported by the trial judge. The testimony of plaintiff answers the charge of unreasonableness against the contract levied by the appellant. Although it may seem unreasonable to suppose that a knowledgeable employer, who hired a salesman with a guaranteed salary and a bonus for excess above quota, would pay an additional bonus of 10% of new business regardless of how much was sold, that same hypothesis would not apply when the salesman was employed only to solicit new business and had'no old customers referred to him as a basis for meeting the quota as the regular salesmen did.
We affirm that portion of the judgment relating to the first contract.
Turning to the second contract, we find ourselves considering a judgment that is not final. That portion of the judgment did not resolve the issues between the parties but only ordered an accounting for the amount of the sales made by plaintiff so that it may be determined if any amount of commission or bonuses may be due. The judgment is thus not a final judgment because it requires further proceedings before a determination of either the amount due or that no amount is due. We refer to C.C.P. Art. 1841:
“Art. 1841. Judgments, interlocutory and final
“A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final.
“A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.
“A judgment that determines the merits in whole or in part is a final judgment.”
Since the petitioner actually has two separate contracts the judgment on the first determined the merits completely and is a final judgment. However as to the second contract, the claim is not finally determined. See C.C.P. Art. 1915. The trial court still has jurisdiction to make that determination.
Accordingly, we affirm that portion of the judgment awarding plaintiff $5,600.00, plus attorney’s fees of $850.00 and all costs of the proceedings thus far. We remand the case to the trial court for further proceedings on all other issues.

AFFIRMED IN PART AND REMANDED IN PART.

. We reproduce the agreement as written:

“COMPENSATION AGREEMENT

“Base salary — $18,000 per year figured on an annual quota of $240,000 at 7‘/2% commission. This base salary is paid weekly at the rate of $346.15.
“The excess over the $240,000 quota is figured as follows:
“An additional */2% is added for each $50,000 increments up to a total of 10%.
“Example: $50,000 at 8% equals $4,000
$50,000 at 8‘/2% equals $4,250
$50,000 at 9% equals $4,500
$50,000 at 9‘/2% equals $4,750
$50,000 at 10% equals $5,000
“Theoretically, sales of $340,000 a year would equal a salary of $26,250, sales of $500,000 would be equal to $40,500.
“New business would carry an additional compensation figure. Upton will pay a maximum commission rate of 10% for new customers. A new customer is defined as one that Upton is not now doing business with and has not done business with for the last three years. In cases where there is a question about an account being a new account or not, the President of Upton would have sole responsibility to make the determination of what constitutes a new account.”